**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3578-20

WILLOW RIDGE
APARTMENTS, LLC,

      Plaintiff-Appellant,

v.

UNION CITY RENT
STABILIZATION BOARD, a/k/a
THE CITY OF UNION CITY
RENT LEVELING BOARD,

      Defendant-Respondent,

and

MIGUELINA VELEZ,

      Defendant/Intervenor-
      Respondent.

_____

Argued June 6, 2022 – Decided July 7, 2022

Before Judges Mayer and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-2658-20.

Xavier M. Bailliard argued the cause for appellant (Kranjac Tripodi & Partners LLP, attorneys; Xavier M. Bailliard and James Van Splinter, on the briefs).

R. Scott Fahrney argued the cause for respondent City of Union City Rent Leveling Board (DeCotiis, Fitzpatrick, Cole & Giblin, LLP, attorneys; R. Scott Fahrney, on the brief).

Gregory G. Diebold argued the cause for intervenor-respondent Miguelina Velez (Northeast New Jersey Legal Services Corp., attorneys; Gregory G. Diebold, of counsel and on the brief; Lawrence Sindoni and Soo Woo, on the brief).

PER CURIAM

In 2015, plaintiff, Willow Ridge Apartments, LLC, purchased a twenty-four-unit apartment building located in Union City (Property) that was constructed in 2002. Plaintiff, as well as the Property's prior owner, operated the building as exempt from local rent control ordinances, as permitted by N.J.S.A. 2A:42-84.1 to -84.6.

In 2019, the Union City Rent Stabilization Board (Board) notified plaintiff that the Property was not exempt from rent control because no evidence existed that a claim of exemption was filed prior to Union City's issuance of a certificate of occupancy as required by N.J.S.A. 2A:42-84.4. Plaintiff contested the Board's determination.

After a hearing, the Board concluded that the prior owner of the Property never filed the required notice and, as a result, the Property did not qualify for the exemption. Plaintiff challenged the Board's decision in the Law Division, at which point Miguelina Velez, a tenant of the Property, intervened as a defendant. Judge Anthony V. D'Elia upheld the Board's findings and dismissed plaintiff's complaint. Before us, plaintiff contests the court's decision, claiming the Board's decision was arbitrary, capricious, and unreasonable. We disagree and affirm.

I.

In order to provide context for our decision, we begin by reviewing the statutory scheme at issue in this appeal as well as the relevant portions of Union City's rent control ordinances.

A.    The Legislation

N.J.S.A. 2A:42-84.1 to -84.6 reflects the Legislature's considered decision to exempt from municipal rent control ordinances residential buildings constructed after June 25, 1987. N.J.S.A. 2A:42-84.2 specifically provides:

> a. In any municipality which has enacted or which hereafter enacts a rent control or rent leveling ordinance, other than under the authority of P.L.1966, c. 168 (C.2A:42-74 et seq.), those provisions of the ordinance which limit the periodic or regular increases in base rentals of dwelling units shall not apply to

A-3578-20

multiple dwellings constructed after [June 25, 1987], for a period of time not to exceed the period of amortization of any initial mortgage loan obtained for the multiple dwelling, or for 30 years following completion of construction, whichever is less.

b. In the event that there is no initial mortgage financing, the period of exemption from a rent control or rent leveling ordinance shall be 30 years from the completion of construction.

The intent of the legislation is explained in N.J.S.A. 2A:42-84.5:

a. It is the intent of P.L.1987, c. 153 (C.2A:42-84.1 et seq.), that the exemption from rent control or rent leveling ordinances afforded under P.L.1987, c. 153 (C.2A:42-84.1 et seq.) shall apply to any form of rent control, rent leveling or rent stabilization, whether adopted now or in the future, and by whatever name or title adopted, which would limit in any manner the periodic or regular increases in base rentals of dwelling units of multiple dwellings constructed after the effective date of P.L.1987, c. 153 (C.2A:42-84.1 et seq.). No municipality, county or other political subdivision of the State, or agency or instrumentality thereof, shall adopt any ordinance, resolution, or rule or regulation, or take any other action, to limit, diminish, alter or impair any exemption afforded pursuant to P.L.1987, c. 153 (C.2A:42-84.1 et seq.).

b. The Legislature deems it to be necessary for the public welfare to increase the supply of newly constructed rental housing to meet the need for such housing in New Jersey. In an effort to promote this new construction, the Legislature enacted P.L.1987, c. 153 (C.2A:42-84.1 et seq.), the purpose of which was to exempt new construction of rental multiple dwelling units from municipal rent control so that the municipal

4

rent control or rent leveling ordinances would not deter the new construction.

The statute also includes two express conditions that require owners who seek an exemption to provide notice to the municipality and prospective tenants. Specifically, N.J.S.A. 2A:42-84.3 provides:

> The owner of any multiple dwelling exempted from a rent control or rent leveling ordinance pursuant to this act, shall, prior to entering into any lease with a person for tenancy of any premises located in the multiple dwelling, furnish the prospective tenant with a written statement that the multiple dwelling in which the premises is located is exempt from rent control or rent leveling for such time as may remain in the exemption period. Each lease offered to a prospective tenant for any dwelling unit therein during the period the multiple dwelling is so exempted shall contain a provision notifying the tenant of the exemption.

N.J.S.A. 2A:42-84.4 also obligates owners of any newly constructed buildings to file a notice claiming the exemption prior to a municipality issuing a certificate of occupancy for any applicable building:

> The owner of any multiple dwelling claiming an exemption from a rent control or rent leveling ordinance pursuant to this act shall file with the municipal construction official, at least 30 days prior to the issuance of a certificate of occupancy for the newly constructed multiple dwelling, a written statement of the owner's claim of exemption from an ordinance under this act, including therein a statement of the date upon which the exemption period so claimed shall commence, such information as may be necessary to

5

effectively locate and identify the multiple dwelling for which the exemption is claimed, and a statement of the number of rental dwelling units in the multiple dwelling for which the exemption is claimed . . . .

B.    Union City's Rent Control Ordinances

Since the Property was constructed, Union City has revised its rent control ordinance several times.  At the time of the Property's construction, Union City, N.J., Rev. Ordinances ch. 14-2(e) (1996) (1996 Ordinance) was in effect and provided, "Consistent with state law, new construction shall be exempt from this chapter."  Union City amended the 1996 Ordinance in its entirety by way of Union City, N.J., Code ch. 334 (2013) (2013 Ordinance).  That ordinance similarly provided, "New construction, consistent with state law, shall be exempt from this chapter."  2013 Ordinance ch. 334-2(B)(4).

In 2017, Union City again revised its rent control ordinance.  Union City, N.J., Code ch. 334 (2017) (2017 Ordinance).  The 2017 Ordinance recognized an exemption for new construction but expressly provided, "This exemption applies only where an owner complied with all requirements in N.J.S.A. 2A:42-84.1 et seq., including the filing with the municipal construction official required by N.J.S.A. 2A:42-84.4 and the service of a written statement upon the tenant required by N.J.S.A. 2A:42-84.3."  2017 Ordinance ch. 334-2(B)(4)(C).

6

In 2018, Union City adopted Union City, N.J., Ordinance 2018-33 (November 27, 2018) (2018 Ordinance), amending the 2017 Ordinance. Therein, Union City added provisions to the 2017 Ordinance stating "[n]otwithstanding the exemption of a property qualified as new construction, the Rent Regulation officer shall be authorized to determine on notice to the landlord and affected tenant(s) the validity of the landlord's application for exemption under the [s]tate [l]aw," and "[i]n the event the [o]fficer determines the requirements under the [s]tate [l]aw have not been met by the [l]andlord, the rent for the affected unit(s) shall be subject to a determination of the legal rent by the [o]fficer under the rent control provisions of this ordinance."

Finally, in 2019, Union City again revised its rent control ordinance. Union City, N.J., Code ch. 334 (2019) (2019 Ordinance). Similar to the 2017 Ordinance, Union City recognized exemptions for new construction but provided, "This exemption applies only where an owner complied with all requirements contained in N.J.S.A. 2A:42-84.1 et seq., including the filing with the municipal construction official required by N.J.S.A. 2A:42-84.4 and the service of a written statement upon the tenant required by N.J.S.A. 2A:42-84.3." 2019 Ordinance ch. 334-2(B)(5)(C).

C.	The Board's Hearing and Decision

After construction was completed, Union City issued a certificate of occupancy for the Property on August 8, 2002. In June 2019, nearly seventeen years later, the Board notified plaintiff that the Property was not exempt from rent control because no claim of exemption notice was filed at the time of construction as required by N.J.S.A. 2A:42-84.4.[1]

Before the Board, plaintiff argued that because the Property was constructed after 1987, it was indisputably exempt from rent control pursuant to N.J.S.A. 2A:42-84.2. It asserted that such a conclusion comported with the plain language and legislative intent expressed in N.J.S.A. 2A:42-84.5. Plaintiff acknowledged that the statute contains "notice requirements," but stated "[t]here is no provision in the [s]tate statute anywhere for a property owner to be penalized by losing an exemption," and explained that N.J.S.A. 2A:42-84.2 used mandatory language when providing an exemption from rent control for properties built after June 25, 1987.

Plaintiff, relying on Overlook Terrace Management Corp. v. Rent Control Board, 71 N.J. 451 (1976), argued further that any municipal ordinance that

---

[1]	We note that the record does not contain the Board's notice letter.

interfered with the statute was preempted. It claimed that if any municipal ordinance applied, the applicable ordinance was the 2013 Ordinance, which was in effect at the time plaintiff purchased the Property and which did not provide for a loss of exemption for failure to provide notice, rather than the more recent amendments, which contained such express penalty language. Plaintiff argued that application of the post-2013 amendments constituted retroactive application of rent control, contrary to South Hamilton Associates v. Mayor & Council, 99 N.J. 437 (1985), and would "punish [plaintiff] for something that happened . . . in 2002 before it even owned the [P]roperty."

At the hearing, the Board considered the testimony of Jazlia Suriel, an employee of Union City's Building Department, and Sandy Tuli, the managing member of the Property. Suriel testified that she reviewed Union City's records associated with the Property and was unable to locate a letter in which plaintiff or its predecessor claimed a rent control exemption.

Tuli described that before purchasing the Property, a realtor provided him with an offering memorandum stating that the Property was exempt from rent control. Tuli also produced a letter in which a representative of the realtor stated that he spoke to the Union City Rent Control office via telephone and confirmed that the Property was exempt from rent control before including that information

in the offering memorandum. In addition, Tuli submitted correspondence from a member of the LLC that previously owned the Property, which stated, "To the best of my knowledge this building was exempt from the rent control registration requirements as it was new construction."

Tuli also claimed that before purchasing the Property, plaintiff "called the Building Department," and was advised that the Property "was new construction" and "exempt from rent control." Further, Tuli stated that Union City had not notified him identifying "issues with rent control or rent leveling" from the time plaintiff purchased the Property until 2019.

Tuli also explained that the Property's management company served two OPRA[2] requests upon Union City. The first requested a list of all new construction buildings built after 1987 and all associated rent control exemption documents for those buildings. Tuli described that Union City provided a list of new construction buildings but advised that it was unable to locate any documents pertaining to rent control exemptions. The second OPRA request sought the certificate of occupancy for the Property. Tuli stated that Union City initially advised that there was no certificate of occupancy on file but later located and produced it.

---

[2] New Jersey Open Public Records Act, N.J.S.A. 47:1A-1 to -13.

 A-3578-20

After the close of testimony, plaintiff argued that it had no reason to believe the Property was subject to rent control and that to impose rent control obligations "would be unduly punitive and would constitute a major violation of the property owner's rights." Further, plaintiff stated that "it was impossible for [plaintiff] to have ever filed this notice within [thirty] days of the [c]ertificate of [o]ccupancy, because [it] didn't own the [P]roperty then" and that it should not lose the exemption because "otherwise a subsequent owner is being punished" for the previous owner's "administrative issue." Finally, plaintiff argued that Union City's inability to locate a notice claiming the exemption for the Property might be the result of a "record keeping issue" citing Union City's inability to find rent control exemption documents for other buildings and delay in producing the Property's certificate of occupancy.

After considering the record, the Board unanimously concluded that due to plaintiff's predecessor's failure to comply with N.J.S.A. 2A:42-84.4's notice provision the Property was subject to rent control. It first found that no notice claiming the exemption was ever filed for the Property. The Board then acknowledged that the statute did not expressly state that failure to file a notice of exemption results in a loss of the exemption, but reasoned that accepting plaintiff's interpretation would render the notice provisions "superfluous." The

11

Board, thereafter, issued a written "Finding of Fact Resolution," in which it stated that "the property owner did not request exemption from the Rent Control Ordinance and that there is no ability to claim the exemption now, and for the reasons set forth on the record, the . . . [P]roperty is subject to the Union City Rent Control Ordinance."

D.   The Law Division's Decision

Plaintiff filed a complaint in lieu of prerogative writs challenging the Board's determination.  After the Board filed an answer, the court permitted Velez to intervene as a defendant.

After considering the parties' written submissions and hearing oral arguments, Judge D'Elia issued a July 13, 2021 order dismissing plaintiff's complaint and provided his reasoning in a July 19, 2021 written opinion.  The judge found, similar to the Board, that plaintiff failed to "provide evidence of the written statement required by [N.J.S.A. 2A:42-84.4] or the written notice to prospective tenants required by [N.J.S.A. 2A:42-84.3]" and "municipal records did not reveal any notices either."

Judge D'Elia also determined that "the record does not establish that [p]laintiff attempted to confirm that the exemption applied before purchasing the [P]roperty in 2015."  He explained that despite plaintiff's assertions to the

contrary, "[n]either the prior owner nor the broker testified below," there were credibility issues with regard to their statements, and Tuli's credibility was subject to the Board's evaluation.

Judge D'Elia rejected plaintiff's arguments that Union City bore the burden to demonstrate that notice was not filed and that the Board improperly concluded that the prior owner failed to file the notice because it had demonstrable issues with its record keeping. The judge explained that the burden is on the property owner to prove compliance with the statute's notice requirements and that "there is sufficient evidence in the record to justify the [B]oard's conclusion that the requisite notice required by [N.J.S.A. 2A:42-84.4] [was] not received by Union City [thirty] days prior to the issuance of the [certificate of occupancy] for the [P]roperty."

As a result of these findings, Judge D'Elia concluded that "[t]he Board did not act arbitrarily or capriciously when it relied upon the 2019 . . . [O]rdinance[3] to assess the consequences for the property owner's failure to prove that it, or the previous owner, complied with [N.J.S.A. 2A:42-84.4]." He found that "the

---

[3] We note that Judge D'Elia's July 19, 2021 written opinion cited the 2019 Ordinance, whereas the Board referenced the 2018 Ordinance at the hearing. Any error, however, in referencing the 2019 Ordinance is inconsequential as a property owner's failure to satisfy N.J.S.A. 2A:42-84.4's notice provision would result in a loss of rent control exemption under either ordinance.

2019 [Ordinance] is consistent with [N.J.S.A. 2A:42-84.4]," explaining that "[b]oth require written notice to the city [thirty] days prior to obtaining a [certificate of occupancy]." The judge reasoned further that although "the statute is silent as to the consequences of a property owner's failure to comply with that notice requirement, the 2019 [Ordinance] clarifies that issue. Thus, the ordinance does not contradict the state's statute."

Judge D'Elia further stated that the "essence" of plaintiff's argument was that there are "no consequences if the [notice] requirement is not satisfied." He explained courts "must interpret a statute, and particularly the notice provisions of [N.J.S.A. 2A:42-84.4], so as not to reduce that language requiring the [thirty] day notice to mere surplusage," and found that "[t]he Legislature clearly established its intent and purpose under N.J.S.A. 2A:42-84.4 by requiring that any owner of a newly constructed multiple unit dwelling file a statement of exemption with the municipal construction office [thirty] days prior to issuance of certificate of occupancy."

Judge D'Elia also reasoned that "[i]t is of no import that the [C]ity relied upon [the 2019 Ordinance]." He explained "[i]f the statute is to have any significance, then Union City could have terminated the property owners'

14

exemption from the rent control ordinance even in the absence of the 2019 [Ordinance]."

In addition, the judge determined that the Board's conclusion that the Property was not exempt from rent control would be "justified separately and apart [from] plaintiff's failure to show compliance with [N.J.S.A. 2A:42-84.4]" because it also failed to comply with N.J.S.A. 2A:42-84.3. He explained that N.J.S.A. 2A:42-84.3 requires property owners to provide notice to "prospective tenants of the claimed exemption from rent control" and found that "[n]one of the prospective tenants [of] this [P]roperty" were notified. He stated that "plaintiff asks this [c]ourt to simply ignore the mandatory requirement[]" but reasoned that N.J.S.A. 2A:42-84.3 "cannot be considered mere surplusage." This appeal followed.

## II.

In plaintiff's first point it argues that the Board's decision was improper because it relied on the incorrect municipal ordinance. Specifically, it claims the Board reached its decision by retroactively applying the 2019 Ordinance when it should have applied the 1996 Ordinance, which was in effect when the Property was built.

Plaintiff asserts the 1996 Ordinance "grants any building built after 1987 an absolute and unconditional exemption from rent control, without any requirement or condition precedent that an owner must provide written notice to the City prior to obtaining the same" whereas the 2019 Ordinance "requires that an owner of a building submit written notice of exemption as a condition precedent to the building being exempt from rent control." Plaintiff acknowledges that ordinances "may be applied retroactively when specifically set forth therein" but argues "the 2019 Ordinance does not contain any such provision or stated intent" and therefore, "cannot be applied retroactively." We disagree with these arguments.

Under our standard of review, "[a] board's decision 'is presumptively valid, and is reversible only if arbitrary, capricious, and unreasonable.'" Smart SMR of N.Y., Inc. v. Borough of Fair Lawn Bd. of Adjustment, 152 N.J. 309, 327 (1998) (quoting Sica v. Bd. of Adjustment, 127 N.J. 152, 166-67 (1992)). Thus, we will defer to the Board's decision "if it is supported by the record and is not so arbitrary, capricious, or unreasonable as to amount to an abuse of discretion." Ibid.

Here, contrary to plaintiff's contention, the controlling authority upon which the Board relied was N.J.S.A. 2A:42-84.1 to -84.6, rather than any

16

specific Union City rent control ordinance. Indeed, the Board reached its decision by analyzing the aforementioned statutory language and reasoning that accepting plaintiff's interpretation would render the text of N.J.S.A. 2A:42-84.4 as mere surplusage. Likewise, its written resolution provided that "the property owner did not request an exemption from the Rent Control Ordinance and . . . there is no ability to claim that exemption now."

As such, we need not decide which iteration of Union City's rent control ordinances was applicable. In any event, the Board's decision would be the same whether it applied the 2019 Ordinance, which expressly requires notice pursuant to N.J.S.A. 2A:42-84.4 to qualify for an exemption, or the 1996 Ordinance, which provided "[c]onsistent with state law, new construction shall be exempt from this chapter."

## III.

Plaintiff argues next that the "requirement that written notice be provided to the City as a condition to obtaining exemption" contained in the 2019 Ordinance "is expressly preempted by N.J.S.A. 2A:42-84." It claims that N.J.S.A. 2A:42-84.2's language is clear and unambiguous and "explicitly states that any building built after 1987 cannot be subject to any municipal rent control ordinance."

17

Plaintiff asserts further that the Board's interpretation that a rent control exemption under N.J.S.A. 2A:42-84.2 is conditioned on compliance with the statute's notice requirements is flawed. First, it argues that the Board improperly interpreted the word "shall" as having two different meanings in the statute. Specifically, it claims the Board interpreted the word "shall" as used in N.J.S.A. 2A:42-84.4 as creating a mandatory requirement, while interpreting N.J.S.A. 2A:42-84.2's language that "rent control . . . ordinances . . . shall not apply" as being conditioned on the property owner filing the requisite notice.

Second, it contends the statute does not expressly provide that compliance with the notice requirements is a "prerequisite[] to obtaining an exemption or that exemption status is lost if . . . written notices are not provided." It argues that "had the [L]egislature intended for any penalty to be imposed in the event of non-compliance with [the notice provisions] . . . [it] would have set forth that penalty." Further it claims that the "permanent loss of rent control exemption" would be an "incredibly drastic and punitive penalty."

Finally, at oral argument, plaintiff contended that allowing a property owner to obtain a rent control exemption despite its failure to file a timely notice would not prejudice the municipality. It argued that absent timely notice the municipality would be able to retroactively determine whether the subject

property qualified as post-1987 new construction by reviewing historical construction documents.

We are not persuaded by these arguments and agree with Judge D'Elia that established principles of statutory interpretation dictate that N.J.S.A. 2A:42-84.4's notice requirement is a mandatory condition precedent to receipt of a rent control exemption under N.J.S.A. 2A:42-84.2. First, because N.J.S.A. 2A:42-84.1 to -84.6 created a new right to a rent control exemption, strict compliance with its terms is required to qualify for the exemption. Second, if compliance with N.J.S.A. 2A:42-84.4 were not required, it would constitute meaningless surplusage.

"[W]e apply de novo review to an agency's interpretation of a statute." Russo v. Bd. of Trustees, Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). However, "[w]here an agency is charged with enforcing a statute, 'courts accord substantial deference to the interpretation given to the statute by the agency.'" Casciano v. Bd. of Review, 300 N.J. Super. 570, 576 (App. Div. 1997) (quoting Bd. of Educ. v. Neptune Twp. Educ. Ass'n, 144 N.J. 16, 31 (1996)). "Deference to agency interpretation of a statute is appropriate as long as that interpretation is reasonable[] and does not conflict with the express or implied intent of the [L]egislature." Id. at 576-77 (internal citations omitted).

"[A] court may declare an ordinance invalid if it . . . is preempted by superior legal authority." Redd v. Bowman, 223 N.J. 87, 108 (2015) (alterations in original) (quoting Rumson Estates, Inc. v. Mayor & Council, 177 N.J. 338, 351 (2003)). "Preemption is a judicially created principle based on the proposition that a municipality, which is an agent of the State, cannot act contrary to the State." Ibid. (quoting Overlook Terrace Mgmt. Corp., 71 N.J. at 461).

When interpreting a statute, the first step is to look to the plain meaning of the language. Bergen Com. Bank v. Sisler, 157 N.J. 188, 202 (1999). "A statute's meaning is not self-evident, however, where varying interpretations of the statute are plausible." Ibid.; see also Bubis v. Kassin, 184 N.J. 612, 626 (2005). In those situations, the court should look to "judicial interpretation, rules of construction, or extrinsic matters." Bergen Com. Bank, 157 N.J. at 202. The purpose of such interpretation is to "effectuate the legislative intent in light of the language used and the objects sought to be achieved." Twp. of Pennsauken v. Schad, 160 N.J. 156, 170 (1999).

"We do not view [statutory] words and phrases in isolation but rather in their proper context and in relationship to other parts of [the] statute, so that meaning can be given to the whole of [the] enactment." State v. Twiggs, 233

20

N.J. 513, 533 (2018) (alterations in original) (quoting State v. Rangel, 213 N.J. 500, 509 (2013)). Indeed, we "can . . . draw inferences based on the statute's overall structure and composition," State v. S.B., 230 N.J. 62, 68 (2017), and consider "the entire legislative scheme of which [a statute] is a part," Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 129 (1987). "We do not support interpretations that render statutory language as surplusage or meaningless." Burgos v. State, 222 N.J. 175, 203 (2015); see also In re Commitment of J.M.B., 197 N.J. 563, 573 (2009) ("Interpretations that render the Legislature's words mere surplusage are disfavored. Rather, . . . our task requires that every effort be made to find vitality in the chosen language." (internal citation omitted)).

"A limitation contained in a statute creating a new right [is] generally considered a condition precedent to the existence of the right itself . . . ." Kaczmarek v. N.J. Tpk. Auth., 77 N.J. 329, 339 (1978). "[A] statute granting a new right usually is mandatory, and the viability of such a right is contingent upon strict compliance with the law and all its conditions." Shambie Singer, 3 Sutherland Statutory Construction § 57:16 (8th ed. 2020); see also People ex rel. Dunbar v. First Nat. Bank of Colorado Springs, 356 P.2d 967, 970 (Colo. 1960) ("It is a fundamental rule that, where statutes confer a new right . . . and prescribe

a mode for the acquisition, preservation, enforcement, or enjoyment, such are mandatory, and must be strictly complied with, and . . . if not complied with, no right exists." (quoting Schaut v. Joint Sch. Dist. No. 6, Towns of Lena & Little River, 210 N.W. 270, 272 (Wis. 1926))).

We first note, again, that a fair reading of the Board's decision evidences that the Board did not premise its decision on the language of any particular ordinance, but rather its interpretation of N.J.S.A. 2A:42-84.1 to -84.6. We agree with plaintiff, however, that N.J.S.A. 2A:42-84.4 does not expressly state the consequence of a property owner's failure to file a claim of exemption prior to the issuance of a certificate of occupancy and, as a result, we apply the aforementioned principles of statutory interpretation to resolve the issue. Bergen Com. Bank, 157 N.J. at 202. In doing so, we conclude the Board correctly determined that compliance with N.J.S.A. 2A:42-84.4's notice requirement operates as a prerequisite to obtaining an exemption from rent control pursuant to N.J.S.A. 2A:42-84.2.

First, N.J.S.A. 2A:42-84.1 to -84.6 created a new right to rent control exemptions. As such, we presume that the Legislature intended strict compliance with N.J.S.A. 2A:42-84.4 to be required for property owners to

qualify for a rent control exemption. See Kaczmarek, 77 N.J. at 339; Dunbar, 356 P.2d at 970.

Second, reading N.J.S.A. 2A:42:84.4 in context of "the entire legislative scheme of which it is a part," Kimmelman, 108 N.J. at 129, avoiding "[i]nterpretations that render the Legislature's words mere surplusage," and making "every effort . . . to find vitality in the chosen language," In re J.M.B., 197 N.J. at 573, further supports the interpretation that providing the requisite notice operates as a condition precedent to receipt of a rent control exemption. To hold otherwise would render N.J.S.A. 2A:42-84.4 meaningless surplusage, as there would be no consequence for a property owner's failure to provide the requisite notice. See Burgos, 222 N.J. at 203; In re J.M.B., 197 N.J. at 573.

Such an interpretation also appears to effectuate the legislative intent because it advances the pragmatic goal of N.J.S.A. 2A:42-84.4. Providing the notice required by N.J.S.A. 2A:42-84.4 thirty days prior to the issuance of a certificate of occupancy serves a clear purpose — to allow a municipality to inspect the subject property in a timely fashion and ensure that it qualifies for the exemption. Accepting defendant's interpretation of the statute would allow property owners to circumvent that necessary safeguard, a result the Legislature clearly did not intend. We also note that timely notice allows municipalities to

23

memorialize and track which properties are subject to, and exempt from, rent control.

Finally, we reject plaintiff's argument that any delay in notice is essentially harmless under the circumstances and penalizes it in a draconian fashion as a municipal entity could determine whether properties qualify as post-1987 new construction by reviewing historical construction documents. First, such relief is contrary to the express statutory language. Second, plaintiff's interpretation of N.J.S.A. 2A:42-84.4 would place an undue burden on municipalities to conduct retroactive analyses of construction projects potentially, as in this case, decades after construction. Third, we also reject plaintiff's prejudice claims as it produced no proof that its predecessor complied with N.J.S.A. 2A:42-84.4, and any lack of diligence by plaintiff on that point should not be visited upon the municipality. In sum, we are satisfied that the Board's statutory interpretation was reasonable and is entitled to our deference. Casciano, 300 N.J. Super. at 576-77.

IV.

Finally, plaintiff argues that the Board improperly found that a claim of exemption had never been filed for the Property. It asserts that the evidence it presented to the Board "support[ed] the inescapable conclusion that written

24

notice . . . was provided within the time limitations set forth in the 2019 Ordinance." Plaintiff specifically references its proofs indicating that "the prior owner of the Property had operated [it] as exempt from rent control since 2002, . . . the prior owner represented that it provided notice of the exemption to the City, and . . . the Property was marketed in 2015 as being exempt from rent control," which it claims the Board ignored.

Further, Plaintiff contends that the Board "relied exclusively on the fact that the City could not locate in its records the written document that the prior owner represented had been provided." It claims that "the evidence introduced at the [h]earing demonstrated that the City's record keeping was deficient and could not be relied on," citing Union City's initial failure to locate the certificate of occupancy associated with the Property in response to plaintiff's OPRA request. We also disagree with these arguments.

As noted, we will defer to the Board's decision "if it is supported by the record and is not so arbitrary, capricious, or unreasonable as to amount to an abuse of discretion." Smart SMR of N.Y., 152 N.J. at 327 (quoting Sica, 127 N.J. at 166-67). "If the factual findings of an administrative agency are supported by sufficient credible evidence, courts are obliged to accept them." Self v. Bd. of Review, 91 N.J. 453, 459 (1982).

Here, the Board concluded that no claim of exemption associated with the Property had been filed, based on Plaintiff's failure to provide a copy and Union City's inability to locate one in its records. Because that finding was supported by the record, it is entitled to our deference. Self, 91 N.J. at 459 (1982).

Plaintiff's arguments to the contrary are unpersuasive. First, that Union City was not initially able to locate the Property's certificate of occupancy in no way establishes that its record keeping was deficient to the extent that the Board could not rely on the absence of a record in reaching its conclusion.

Second, plaintiff's proofs fell well short of establishing an "inescapable conclusion that written notice . . . was provided within the time limitations set forth in the 2019 Ordinance," as it contends. As noted, Union City was unable to locate a claim of exemption for the Property in its records and plaintiff failed to produce one.

Further, the proofs plaintiff presented to the Board were based, in large part, on inadmissible hearsay. Plaintiff attempted to establish that the notice had been filed by introducing: 1) a letter from a representative of the realtor who sold the Property stating that he spoke to the Union City Rent Control office and confirmed that the Property was exempt from rent control; 2) a letter from a member of the LLC that previously owned the Property stating that the

26

Property was exempt from rent control as new construction; and 3) Tuli's testimony that before purchasing the Property plaintiff contacted an unnamed Building Department representative who advised it that the Property was exempt from rent control.

Each of these proofs, absent perhaps the statement from the anonymous representative of the Union City Building Department, were offered for their truth and consisted of statements made outside of the Board's hearing and, therefore, constituted inadmissible hearsay. See N.J.R.E. 801(c). Although we acknowledge that hearsay statements are admissible in administrative hearings, we discern from the Board's comments that it deemed the probative value of plaintiff's proofs to be minimal. We are satisfied that the Board did not abuse its discretion by rejecting those bare proofs and relying instead on Suriel's direct testimony stating that Union City's records did not contain a claim of exemption for the Property.

Finally, we note that plaintiff did not contend before the Board that Union City's failure to identify the lack of a claim of exemption for the Property before 2019 should result in it being equitably estopped from revoking the Property's exempt status, and, as such, the Board made no attendant findings. Plaintiff also did not raise an estoppel argument before us. We, therefore, consider any such

argument waived.  N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015) ("An issue that is not briefed is deemed waived upon appeal.").

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3578-20